**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 06-108 |
| | : | |
| | : | Sentencing: November 17, 2006 |
| DAVID J. HUGHES, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

**UNITED STATES' MOTION FOR
TWO POINT REDUCTION FOR ACCEPTANCE
OF RESPONSIBILITY
AND MEMORANDUM IN AID OF SENTENCING**

COMES NOW, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and hereby respectfully submits its Motion For Three-Point Reduction For Acceptance of Responsibility and Memorandum in Aid of Sentencing. In support thereof, the United States would respectfully showing the following:

**Motion for Reduction**

A. Factual Summary of Instant Offense

1. On March 30, 2006, at approximately 9:55 a.m., the Federal Bureau of Investigation's Safe Streets Task Force executed a search warrant at 535 42nd Street, N.E., Washington, D.C. As the agents were preparing to execute the warrant, they observed the defendant, later identified as David J. Hughes, approach the entrance of the residence with a set of keys to the front door and the security door.

2. After securing the premises, the task force members searched the residence and recovered the following:

-1-

(a) Large chunks of cocaine base – commonly referred to as crack -- along with several empty ziplocks and razor blades, on a plate located on an entertainment center in the defendant's bedroom;

(b) A .38 caliber Colt revolver (serial number C27772), additional empty ziplocks and documents belonging to the defendant in a showbox located on a night stand in the defendant's bedroom;

(c) $2,850 in U.S. Currency on the entertainment center in the defendant's bedroom;

(d) In the room across the hall from the defendant's bedroom, a shoebox with a .357 Ruger revolver, several rounds of loose ammunition, and an identification card in the name of "Hughes"; and

(e) In the trunk of a Cadillac parked in the back of the house, there was a blue plastic bag with 84 ziplocks of marijuana.

The police also recovered $644 in U.S. Currency from the defendant's person.

3. The crack cocaine that was recovered from the defendant's bedroom weighed 26 grams and the marijuana weighed 335 grams.

4. The defendant told the agents that he had recently made sales of crack cocaine from the chunks found in his bedroom and that the marijuana belonged to him. The defendant also told the agents that there was a gun in the shoebox in his room.

5. A fingerprint belonging to the defendant was recovered from the .38 caliber Colt revolver found in his bedroom.

B. Defendant's Acceptance of Responsibility

6. The defendant expressed an early interest in entering into a plea. Because of the defendant's early acceptance of responsibility, the United States was able to conserve valuable prosecution resources by preparing for trial and the defendant is entitled to a three-point reduction for acceptance of responsibility pursuant to Section 3E1.1 of the United States Sentencing Guidelines.

## Memorandum in Aid of Sentencing

7. Based on the information set forth in the Presentence Investigation Report (PSR), the defendant's base offense level is governed by the fact that defendant pled guilty and accepted responsibility for unlawful possession with the intent to distribute 5 grams or more of cocaine base. U.S.S.G. §2D1.1. The defendant's initial base offense level is 28. This level was then increased due to the fact that the defendant possessed a firearm in relation to a drug trafficking offense, and that resulted in the offense level being 30. U.S.S.G. § 2D1.1(b)(1). In the event that the Court grants the United States' motion, the defendant's base offense level would then be 27. Based on a total offense level of 27 and a criminal history category of I, the guideline range of imprisonment is 70 to 87 months. U.S.S.G. Chapter 5, Part A.[1] The government is recommending that the defendant be sentenced to 70 months. A sentence of 70 months is reasonable because it is within the guidelines and because of the facts and circumstances of this case.

8. First, the Court should impose a sentence within the Sentencing Guideline range because it is presumptively reasonable. In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme

---

[1] The government's position on defendant's base offense level, as well as its positions on all applicable specific offense characteristics and adjustments is supported by the PSR.

Court held that the mandatory application of the United States Sentencing Guidelines violated the Sixth Amendment principles articulated in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004). The Court invalidated the statutory provision that made the Guidelines mandatory: Title 18, United States Code, Section 3553(b)(1). <u>Booker</u>, 124 S. Ct. at 764. The Court upheld the remainder of the Guidelines as the most appropriate benchmark for informing courts as to the most reasonable sentence for a particular defendant who has committed a particular crime. Indeed, it remains the case that if the sentencing court imposes a sentence that is outside the range as set forth in the Guidelines, the Court must state in a written order of judgment and commitment the specific reason for the imposition of a sentence different from that described in the Guidelines. <u>See</u> 18 U.S.C. § 3554(c)(2). The sentence will then be subject to review by courts of appeals for "reasonableness." <u>Booker</u>, 124 S. Ct. at 766.

In <u>Booker</u>'s wake, this Court must continue to resolve disputed questions of fact and law and correctly calculate a defendant's sentence under the existing Sentencing Guidelines. <u>See</u> Fed. R. Crim. P. 32(i)(3)(B) (court must rule on unresolved objections to the Presentence Report or determine that resolution not necessary to sentencing). "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." <u>Booker</u> 124 S. Ct. at 767 (citing 18 U.S.C.A. §§ 3553(a)(4)&(5) (Supp. 2004)). In light of this mandate – and the continued requirement of written explanations for sentences that fall outside of the range called for by the Guidelines and the new standard of "reasonableness" review – it is plain that a sentence within the Guidelines, while not required, is reasonable <u>per</u> <u>se</u>. Not only is a sentence within the Guideline range presumptively reasonable, but it also accommodates the salutary goal, endorsed by both Congress and the Supreme Court, of meting out fair and uniform sentences.

9. The Sentencing Guideline range for the defendant's charge is not only presumptively reasonable, for the reasons outlined above, but it is reasonable and appropriate for this defendant based on the facts of this case. Here, the defendant had a significant amount of crack cocaine, as well as a substantial amount of marijuana and two handguns.

10. First, it should be noted that, according to the PSR, the defendant does not have a conviction on his record. However, the defendant has been arrested twice before. Thus, the defendant is not a stranger to the criminal justice system and was well aware of the consequences of his actions.

11. Second, it is noteworthy that the defendant had a significant amount of narcotics and two guns in his possession at the time he was arrested, as well as nearly $3,500. As reflected by the enhancement imposed for possessing a firearm during the commission of this offense, as well as the Court's own experience, the combination of drugs and guns are notorious for potential violence. While there is nothing in the record suggesting that the defendant had actually engaged in acts of violence, the defendant's conduct plainly created a dangerous situation. Thus, the record here demonstrates that the defendant is a significant risk to the community.

12. Third, because the defendant pled guilty to possessing more than five grams of cocaine base, he is subject to a sentence of sixty months as a mandatory minimum. In light of the large amount of narcotics and the presence of a firearm, a sentence of 70 months is warranted. The statute and the guidelines reflect the serious nature of this crime and Congress' concern.

13. Fourth, this sentence is supported by the factors to be considered by courts as articulated in 18 U.S.C. § 3553(a). This provision provides, in pertinent part, that when fashioning a sentence, courts should consider:

(a). The circumstances surrounding the offense and defendant's criminal history: At the time of his arrest, the defendant drove a school bus part-time for the District of Columbia. Thus, the defendant was fully capable of being employed. While the defendant has a minimal criminal history, the presence of such a large amount of crack, marijuana and two firearms reflects the defendant's express choice not to pursue gainful employment, but rather to engage in criminal activity by dealing drugs.

(b). The seriousness of the offense and the need to promote respect for the law and punishment: In light of the two firearms and the substantial amount of narcotics, the defendant's offense is very serious and warrant a significant period of incarceration.

(c). Potential deterrence: It needs to be made clear to the defendant that trafficking in drugs in the District of Columbia will not go unpunished.

(d). Protecting the public: The deadly combination of drugs and firearms are well known and, therefore, there is a substantial need to protect the public.

(e). The needs of the rehabilitative needs of the defendant: The record does not reflect the need for any particularly form of rehabilitation. The defendant had employment opportunities and a stable place to live. The offense came about simply because the defendant choose to possess narcotics and two firearms.

Application of Safety Valve Provision

14. The defendant has indicated that he intends to ask the Court to apply § 5C1.2 of the Sentencing Guidelines. If applied, this guideline would reduce the defendant's sentence to nearly half of what is reflected in the PSR. § 5C1.2(b) U.S.S.G. However, the acquaintance is not entitled to have the provision applied here because the record for two reasons. First, this guidelines does not

apply where a defendant possesses a firearm in connection with the underlying offense. Here, the record demonstrates that the defendant possessed a .38 caliber Colt revolver in connection with the offense to which he pled guilty.[2] § 5C1.2(a)(2). Indeed, in addition to the fact that the gun was found in a shoebox with empty ziplocks in his room, the defendant's fingerprint was found on the weapon. Paragraph (a)(2) of § 5C1.2 limits application of the guideline to situations where a defendant does not possess a firearm in connection with the offense. Here, the record clearly reflects that the defendant possessed the weapon. See e.g. United States v. Herrera, 446 F.3d 283 (2d Cir. 2006); United States v. Zavalza-Rodriguez, 379 F.3d 1182 (10th Cir. 2004). Therefore, the defendant is not eligible and the Court should sentence the defendant to 70 months of incarceration.

15. In addition, § 5C1.2(a)(5) of the guidelines requires, in order to qualify, the defendant must "truthfully" provide all evidence and information the defendant has regarding the offense to the government. Here, the defendant has failed to truthfully provide the government with information and evidence regarding the crack cocaine, marijuana, and firearms found during the execution of the search warrant at his home. Although the defendant met with the United States on September 11, 2006, the defendant was not truthful. The defendant represented that an old high school acquaintance, Keith Jones, who he had been in contact with for two years, suddenly dropped by the defendant's house "a few months earlier" and left $3500, nearly 31 grams of crack cocaine, and 84 ziplocks of marijuana. The defendant represented that Keith Jones lived in North Carolina, but that the defendant did not know Mr. Jones' address or telephone number, or how to make contact with him. The defendant also represented that he did not know where Mr. Jones stayed when he

---

[2] The defendant is eligible to the extent that he does not have a criminal history of more than 1 point; this offense did not result in the death; and the defendant does not appear to have been an organizer, leader, manager or supervisor within the meaning of the guidelines.

came to Washington, D.C. or how to make contact with him while he was here. The defendant indicated that Mr. Jones would call him every other week on the defendant's prepaid cellphone. The defendant also represented that, instead of borrowing from the $3500, he started selling some of Mr. Jones' crack cocaine when the defendant ran low on cash and that he only did it occasionally. The defendant stated that, although he never mentioned this when Mr. Jones called every other week, he planned on telling Mr. Jones when he came back from his crack cocaine, marijuana and cash. In light of the fact that the police were able to get a search warrant on the basis that the defendant was seen regularly selling narcotics, it is the government's position that the defendant was not truthful.

Therefore, under these factors, the Court should reject the defendant's request for application of the safety valve guideline and sentence the defendant to 70 months of incarceration.

    Respectfully,

    KENNETH L. WAINSTEIN
    United States Attorney


    By: _____
    MICHAEL T. TRUSCOTT
    ASSISTANT UNITED STATES ATTORNEY
    Member of the New York Bar
    Federal Major Crimes Section
    United States Attorney's Office
    555 Fourth Street, N.W., Room 4237
    Washington, D.C. 20530
    Phone: (202) 514-7533
    Fax: (202) 514-6010