UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Cr. No. 06-108 (CKK) |
| | : | |
| DAVID HUGHES, | : | |
| | : | |
| **Defendant** | : | |

### SENTENCING MEMORANDUM

On June 30, 2006, Mr. David Hughes, the defendant, pled guilty to Count One in an Indictment charging him with Possession with Intent to Distribute 5 Grams of More of Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii). He will appear before this Honorable Court for sentencing on November 17, 2006. Mr. Hughes, through undersigned counsel, respectfully submits the following information for the Court's consideration in determining a fair and just sentence.

### BACKGROUND

On March 30, 2006, members of the Federal Bureau of Investigation (F.B.I.) executed a search warrant at 535 42nd Street, N.E., Washington, D.C. Prior to the execution of the search warrant, Mr. Hughes was stopped and searched in front of the entranceway to the residence. Mr. Hughes had in his possession a set of keys to the residence and was in fact returning to the 535 42nd Street address after completing his morning shift as a bus attendant for D.C. Public Schools. Once agents of the F.B.I. were inside the residence, Mr. Hughes assisted the agents in securing a dog that was located inside the basement.

The following items were recovered from the bedroom that belonged to Mr. Hughes: a

plate containing a large white rock of cocaine base weighing approximately 26 grams found on top of an entertainment center; small ziplock bags and razor blades also found on a plate on top of an entertainment center; .38 revolver inside a shoebox found on top of a nightstand; currency in the amount of $2,850.00; and various photographs of Mr. Hughes and mail matter in his name. Across the hallway, in another bedroom - not believed to belong to Mr. Hughes, was another shoebox. Located inside that shoebox was a .357 revolver with one round of .357 ammunition loaded inside the .357 revolver in addition to two other rounds of .357 ammunition. Further, agents also recovered 84 ziplock bags of marijuana from the trunk of a car that was parked in the backyard.

On April 27, 2006, the grand jury returned a five-count indictment charging Mr. Hughes with the following offenses: Count One - Unlawful Possession with Intent to Distribute 5 Grams or More of Cocaine Base, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(iii); Count Two - Unlawful Possession with Intent to Distribute Cannabis, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(D); Count Three - Using, Carrying and Possessing a Firearm During a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1); Count Four - Possession of an Unregistered Firearm, in violation of 7 D.C. Code § 2502.1; and Count Five - Possession of Unregistered Ammunition, in violation of 7 D.C. Code § 2506.01. Mr. Hughes was arraigned on the indictment on May 12, 2006, and indicated shortly thereafter his interest in resolving the case.

As the parties worked out a plea agreement, the issue arose as to whether or not Mr. Hughes would be eligible for a decrease of two levels pursuant to U.S.S.G. § 2D1.1(b)(9) and U.S.S.G. § 5C1.2, Limitation on Applicability of Statutory Minimum Sentences in Certain Cases (hereinafter referred to as "safety valve"). On May 22, 2006, this Court ordered the Probation

Office to prepare an offense level calculation, specifically ordering the Probation Office to determine whether or not the safety valve applied.

On June 1, 2006, the Probation Office submitted a Memorandum to the Court and the parties regarding the May 22, 2006, Order. In its Memorandum, the Probation Office determined that Mr. Hughes did qualify for the safety valve therefore, eligible for a two level reduction pursuant to U.S.S.G. § 5C1.2. Further in its Memorandum, the Probation Office determined that an enhancement for possession of a firearm, pursuant to U.S.S.G. § 2D1.1(b)(1) did not apply. After receipt of this Memorandum, it was learned that the firearm found in Mr. Hughes' bedroom bore his fingerprint.

On June 30, 2006, Mr. Hughes pled guilty to Count One of the Indictment pursuant to a written plea agreement. Under the terms of the plea agreement, Mr. Hughes agreed to a two level increase in his base offense level pursuant to U.S.S.G. § 2D1.1(b)(1) in light of his possession of the firearm recovered from his bedroom. This agreement, however, does not preclude him from seeking a two level reduction pursuant to the safety valve provision found in U.S.S.G. § 5C1.2 and § 2D1.1(b)(9).

After this Court accepted Mr. Hughes' guilty plea, the Court then issued an order with a briefing schedule directing the parties to file Sentencing Memorandum on the topic regarding his eligibility for the safety valve. On August 30, 2006, the Probation Office disclosed the PreSentence Report (PSR) in this case indicating its position that Mr. Hughes is no longer eligible for safety valve relief under § 5C1.2. Mr. Hughes objects to this new position taken by the Probation Office. According the PSR writer, Mr. Hughes is not eligible for the safety valve in light of his agreement to a sentencing enhancement under §2D1.1(b)(1). It is the PSR writer's

position that a sentencing enhancement under § 2D1.1(b)(1) automatically forecloses a §5C1.2 safety valve departure.

## ARGUMENT

The safety valve, § 5C1.2, was promulgated in response to 18 U.S.S.G. § 3553(f), which was enacted as part of the Violent Crime Control and Law Enforcement Act of 1994, Pub.L. 103-322, Title VIII, § 8001(a), Title XXVIII, § 280001, Sept. 13, 1994, 108 Stat. 1985, 2095. Sections 3553(f) provides:

> **Limitation on applicability of statutory minimums in certain cases**.-- Notwithstanding any other provision of law, in the case of an offense under section 401, 404, or 406 of the Controlled Substances Act (21 U.S.C. 841, 844, 846) or section 1010 or 1013 of the Controlled Substances Import and Export Act (21 U.S.C. 960, 963), the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission under section 994 of title 28 without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that–
>
> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
>
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> (3) the offense did not result in death or serious bodily injury to any person;
>
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and
>
> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and

> evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

Section § 5C1.2 closely mirrors the statute, in providing:

> **<u>Limitation on Applicability of Statutory Minimum Sentences in Certain Cases</u>**
>
> (a) Except as provided in subsection (b), in the case of an offense under 21 U.S.C. 841, § 844, § 846, § 960, or § 963, the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, if the court finds that the defendant meets the criteria in 18 U.S.C. § 3553(f)(1)-(5) set forth below:
>
> > (1) The defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines before application of subsection (b) of 4A1.3 (Departures Based on Inadequacy of Criminal History Category);
> >
> > (2) The defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
> >
> > (3) The offense did not result in death or serious bodily injury to any person;
> >
> > (4) The defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and
> >
> > (5) Not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

> (b) In the case of a defendant (1) who meets the criteria set forth in subsection (a); and (2) for whom the statutorily required minimum sentence is at least five years, the offense level applicable from Chapters Two (Offense Conduct) and Three (Adjustments) shall be not less than level 17.

As stated in the Pre-Sentence Report Mr. Hughes has no prior criminal history. See PSR, ¶23-25, pg. 6. Second, there is no information to suggest that this offense resulted in death or serious bodily injury to any person. Third, there is no information to suggest that Mr. Hughes held some sort of leadership role nor did he engage in any continuing criminal enterprise. In addition, Mr. Hughes has truthfully provided to the Government all information and evidence that he has concerning the offense he committed during a debriefing which occurred on September 11, 2006. Therefore, the only remaining issue regarding his eligibility for the safety valve relates to the second section of the safety valve criteria which centers around whether or not Mr. Hughes possessed a firearm in connection with his offense.

Four circuits have held that there is no *per se* rule that bars the application of the safety valve when a defendant is found to have possessed a gun under §2D1.1(b)(1). This Circuit has not ruled on this exact issue, however it has ruled that a co-defendant's possession of a weapon did not automatically preclude the safety valve. See United States v. In re Sealed Case, 105 F.3d 1460, 1465 (D.C. Cir. 1997). In the Circuit's analysis that a co-defendant's possession of a weapon does not automatically preclude the safety valve, the court made a distinction between the passive voice of § 2D1.1(b)(1) and the active voice used in § 5C1.2(a)(2) *Id.* at 1463. The court stated that there was significance between the "comparison to the provision enhancing drug sentences for gun possession, which uses the passive voice-requiring enhancement if the firearm 'was possessed' id. § 2D1.1(b)(1) - and omits any reference to the defendant, the safety valve

speaks in the active voice, requiring that 'the defendant' must do the possessing." Id. Also at issue in this case was the original purpose of the safety valve. Id. at 1465. Congress created the safety valve so those defendants whom are "less culpable" do not have to serve the same amount of prison time as those defendants whom are "relatively more culpable" because of mandatory minimum sentences. Id. If constructive possession prevented the safety valve from being applied, the court felt that this would undermine the Congressional purpose for creating the safety valve and therefore, many "less culpable" defendants would no longer qualify for the safety valve, thereby serving mandatory minimum sentences. Id. The court held that something more than constructive possession of another person's weapon needs to be present in order to link a defendant to a gun for the safety valve not to be applied. Id.

Relying heavily on the language of In re Sealed Case, the Tenth Circuit ruled that if a gun is possessed for the purpose of a sentencing enhancement under §2D1.1(b)(1), that does not necessarily preclude the application of the safety valve. See United States v. Zavalza-Rodriguez, 379 F.3d 1182, 1183-87 (10th Cir. 2004). In Zavalza-Rodriguez, the defendant was arrested after a house was searched and narcotics, distribution materials, five firearms, and large amounts of cash were recovered. Id. at 1184. One of the guns recovered was a loaded .45 caliber semiautomatic pistol which was found in the defendant's bedroom. Id. The defendant entered into a written plea agreement with the government and as a part of that agreement stipulated to the two-level sentencing enhancement under §2D1.1(b)(1); however the defendant sought a two level decrease pursuant to the safety valve under § 5C1.2. Id. The district found that the defendant had met his burden by the preponderance of the evidence that the gun was not used in connection with the offense and therefore the safety valve applied (the other four criteria were

7

uncontested); and the government appealed. Id.

Borrowing heavily from the ideas set forth in In re Sealed Case, the court centered its analysis around the differences in language used in § 2D1.1(b)(1) and § 5C1.2(a)(2). Id. at 1187. Section § 2D1.1(b)(1) simply requires the government to initially show that the gun "was possessed" for the enhancement to apply, and requires the defendant to show it was "clearly improbable that the weapon was connected with the offense." § 2D1.1, comment. (n.3), to negate the enhancement. Id. at 1186. Section 5C1.2, however, requires the defendant to show, by a preponderance of the evidence, that the gun was not possessed in "connection with the offense." Id. at 1187.

In light of different language of the two subsections the court explained:

> A defendant therefore need only demonstrate by a preponderance of the evidence eligibility for the safety valve, whereas the defendant must show that it is clearly improbably that a gun was not used in connection with the offense to avoid the § 2D1.1 sentence enhancement.

Id. The court concluded that:

> It simply does not logically follow that the government's ability to show by a preponderance of the evidence that a weapon "was possessed" proximate to the offense entails that a defendant cannot show by a preponderance of the evidence that the weapon was not possessed in "connection with the offense." Nor is there any logical contradiction in our referring to a weapon possessed for purposes of a sentence enhancement with one outcome and then referring to that same weapon for purposes of a sentence reduction with a different outcome.
>
> We conclude, therefore, that sentence enhancement pursuant to § 2D1.1(b)(1) does not foreclose sentence reduction pursuant to § 5C1.2(a)(2). The scope of activity covered by § 2D1.1 is boarder than the scope of activity covered by § 5C1.2. For purposes of § 2D1.1 constructive possession, either physical proximity or

> participation in a conspiracy, is sufficient to establish a weapon
> "was possessed." Whereas for purposes of § 5C1.2 we look to the
> defendant's own conduct in determining whether the defendant has
> established by a preponderance of the evidence that the weapon
> was not possessed "in connection with the offense."

Id. at 1188 (emphasis in original).

As in Zavalza-Rodriguez, Mr. Hughes agrees that he possessed a gun in the present case, however, there is no evidence to suggest that he possessed the gun "in connection with the [drug] offense." The gun recovered from Mr. Hughes' bedroom was unloaded. Further, the gun recovered from Mr. Hughes' bedroom was located in a shoebox away from the drugs which were sitting out in the open on top of an entertainment center. The fact that the gun was located in a covered shoebox not in the direct vicinity of the drugs demonstrates that this gun was passively or constructively possessed by Mr. Hughes, and that he did not maintain active possession or use the gun in connection with his offense. There appears to be a lack of proximity to the offense of distributing drugs.

The Ninth Circuit also held that there is no *per se* rule that bars the application of the safety valve when a defendant is found to have possessed a gun under §2D1.1(b)(1). See United States v. Nelson, 222 F.3d 545, 547 (9th Cir. 2000). In Nelson, the court held that a defendant who has received an enhancement for possession of a dangerous weapon bears the burden to show his eligibility for safety valve relief by a preponderance of the evidence that he did not possess a firearm in connection with a drug offense. Id. 549-551. On remand, the district court found that the defendant did qualify for the safety valve notwithstanding the recovery of 160 marijuana plants growing in a bedroom along with five unloaded guns and was sentenced to 24 months.

The Sixth Circuit has also rejected a *per se* rule that does not allow a defendant to qualify for the safety valve when § 2D1.1(b)(1) applies. See United States v. Bolka, 355 F.3d 909 (6th Cir. 2004). The Court held that "the proposition that conduct warranting a § 2D1.1(b)(1) sentence enhancement *necessarily* forecloses the application of a § 5C1.2 (a) "safety valve" reduction as this *per se* conclusion does not necessarily follow from the different evidentiary standards of §§ 2D1.1(b)(1) and 5C1.2(a)(2)." Id. at 913. Notwithstanding its finding of differing evidentiary standards, the Court found that the defendant did not prove by a preponderance of the evidence that the guns found in his home were not used in connection with drug offense of which he was charged. Id. at 915.

The First Circuit, in a case most similar to that of Mr. Hughes, has also rejected the notion of a *per se* rule that does not allow a defendant to qualify for the safety valve when § 2D1.1(b)(1) applies. See United States v. Anderson, 452, F.3d 87, 89 (1st Cir. 2006). In Anderson, agents serving a search warrant at the defendant's house found several bags of cocaine, a pistol, and a ledger which recorded the amount of money owed to the defendant. Id. at 88. The defendant claimed that he bought the gun three years earlier after a "series of armed home invasions," while conceding that there "was a loaded gun in the house in which he sold drugs." Id. at 89, 92. The government then argued for the two-level firearm enhancement, while agreeing that defendant was eligible for the safety valve. Id.

Noting that the "burden on the defendant is different for these two sentencing provisions," the court agreed with other courts that have decided that "the defendant's failure to meet the higher burden of proof set forth in the firearm enhancement provision of the guidelines did not necessarily preclude the defendant from meeting the lower burden of proof set forth in the

safety valve provision." Id. at 91.

The Anderson case thus lends further support to defendant's contention that the safety valve applies. Of particular note in the Anderson case is that the gun was loaded and present in the same room as the cocaine along with a ledger showing the amount of money owed. Whereas in Mr. Hughes' case, a gun found in his bedroom was unloaded and placed in a shoebox, away from the cocaine base on the entertainment center. Clearly if the defendant in the Anderson case qualified for the safety valve even after keeping a loaded gun in the same room with the cocaine and dealing the drugs from his house; there is no reason why Mr. Hughes should not be afforded the safety valve.

Of particular note is an unpublished decision from this Circuit whereby the district court applied a higher standard of proof for possession of a gun under § 5C1.2 than under § 2D1.1(b)(1) and found the defendant eligible for safety valve relief even though a § 2D1.1(b)(1) enhancement was appropriate. See United States v. Washington, 62 Fed. Appx. 351 (D.C. Cir. 2003)(unpublished). In Washington, a safe containing drugs on a closet shelf and a bag of guns next to the safe were found in the defendant's bedroom. Id. at 351. The defendant appealed the § 2D1.1(b)(1) enhancement, but the government did not appeal the safety valve decision and the Court of Appeals noted, without disapproval, that the district "court's decision is consistent with a finding that Washington possessed the weapons for purposes of the enhancement but not the safety valve." Id. at 353. According to the docket report after remand, District Judge Richard W. Roberts did not apply the § 2D1.1(b)(1) enhancement and sentenced the defendant to 51 months. See also United States v. Washington, 81 F.3d 1147 (D.C. Cir. 1996) (court refused to apply safety valve to defendant because she failed to provide all relevant information to government

11

after search of her apartment revealed marijuana and cocaine in bedroom, gun under mattress and ammunition in dresser, therefore possession of firearm not an issue.).

## **CONCLUSION**

For all of the foregoing reasons and such other reasons as may be discussed at the sentencing hearing in this matter, Mr. Hughes respectfully requests a two level reduction pursuant to U.S.S.G. § 5C1.2, thereby resulting in a guideline range of 57 to 71 months. Further, Mr. Hughes requests that he be sentenced to the low-end of that guideline range to a term of 57 months which is adequate to promote the relevant sentencing objectives at issue in this case.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER


_____/s/_____
Dani Jahn
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500